[No. 7014. Decided March 17, 1908.]

## W. B. Presby, *Appellant*, v. A. Melgard, *Respondent*.[1]

Chattel Mortgages — Priorities — Application of Proceeds — Banks and Banking—Evidence—Admissibility. In an action by a second mortgagee of chattels to charge the first mortgagee, a banker, with sums received from the mortgagor which should have been applied to discharge the first mortgage, because (as alleged) proceeds of the mortgaged property, evidence on the part of the defendant is admissible to show that the sums received from the mortgagor were deposits derived in part from other sources than the mortgaged property, all made in one account, against which the mortgagor checked as a depositor.

Same—Failure of Second Mortgagee to Object to Application. A banker, holding a first mortgage on a flock of sheep, their increase, and the clip of wool, upon which there is a second mortgage upon the sheep only, is not required to see that the proceeds of the wool, deposited in the bank by the mortgagor, is applied to discharge the first mortgage, where the mortgagor and second mortgagee had been partners, were both present when the mortgagor made the deposit and checked against the same, paying part of the proceeds to each mortgagee and part to a third person, the second mortgagee making no objection at the time, and where at the time of the deposit, the first mortgagee had sold an interest in, and was only part owner of, the bank.

Appeal from a judgment of the superior court for Klickitat county, McCredie, J., entered February 11, 1907, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to recover the proceeds of a sale of personal property held under a chattel mortgage. Affirmed.

*Huntington & Wilson*, for appellant.

*Bennett & Sinnott*, for respondent.

Crow, J.—This action was commenced by W. B. Presby against A. Melgard, to recover the sum of $500.13, proceeds

[1]Reported in 94 Pac. 641.

of the sale of certain personal property on which the plaintiff held a second mortgage lien and the defendant held a first mortgage lien. The plaintiff alleged that, prior to June 27, 1903, he and one A. W. Nelson were joint owners of eighteen hundred head of sheep; that they borrowed of the defendant, A. Melgard, the sum of $2,500, giving him their personal note maturing June 27, 1904, secured by a chattel mortgage on the sheep, their increase, and the wool to be shorn; that the plaintiff sold his interest in the sheep to his co-owner, A. W. Nelson, who assumed the payment of the $2,500 note, and as part payment for plaintiff's interest in the sheep, executed and delivered to plaintiff his note for $1,000, dated July 23, 1903, due July 1, 1904, secured by a second chattel mortgage on the sheep, but not on their wool or increase; that the defendant at the time had actual notice of the sale to Nelson and of the second note and mortgage held by the plaintiff; that he had knowledge of the fact that the second mortgage did not cover the wool or increase; that plaintiff is still the owner of the second note and mortgage; that $500.13 of the principal, with interest thereon, is unpaid, and due to plaintiff; that at divers times between December 8, 1903, and October 13, 1904, A. W. Nelson, with the knowledge and consent of the defendant but without plaintiff's knowledge or consent, disposed of certain mutton sheep covered by the mortgages, for sums amounting to $804, which sums he turned over to the defendant; that certain of the sheep died, from which Nelson sold pelts for $89.79, which sum he also turned over to defendant; that during the spring of 1904, there was shorn from the sheep covered by the mortgage a large amount of wool, which Nelson sold for $1,269.10, paying the proceeds to defendant; that on October 24, 1904, the defendant requested Nelson to dispose of the remainder of the sheep, which he did, for the sum of $2,891.25, paying the proceeds to the defendant; the total amount thus received by defendant through Nelson for the proceeds of the sheep, pelts, and wool, being $5,054.14; that no portion thereof was

ever credited upon the note for $2,500 held by the defendant and secured by his first mortgage, except $550 credited May 24, 1904, and $2,275.78 credited November 1, 1904, the latter sum being the remainder then due; that after these credits the sum of $2,228.46 remained of the proceeds of the sheep, pelts, and wool which had been received by the defendant, and that after full payment of defendant's note, there should have remained in his hands more than sufficient funds to fully settle plaintiff's claim as second mortgagee.

The plaintiff's theory seems to be, that as the proceeds of the sale of the mortgaged property came into the possession and control of defendant, who had knowledge of plaintiff's second lien, the defendant should have applied to the payment of his prior note for $2,500 and interest, first, all the proceeds of the sale of the wool upon which defendant held a lien but plaintiff held no lien, thus protecting plaintiff's mortgage on the sheep, and second, the proceeds of the sale of such other portions of the property as might be necessary to fully settle the remainder of the defendant's claim; that the defendant failed to do this, but permitted Nelson to divert the funds for other purposes; that the plaintiff thereby lost the security for his note to which he was entitled, and that the defendant is liable therefor.

The defendant, by his answer, in part alleged that he had been conducting a banking business at Goldendale, under the name of "Bank of Goldendale;" that on January 1, 1904, he took his brother into the banking business with him, which they thereafter conducted as partners under the same name; that Nelson did not pay the proceeds of the various sales to him, but from time to time deposited them in the bank of the partnership, to his own credit; that he checked upon his account, making payments to the plaintiff, the defendant, and other parties; that the plaintiff knew of the bank account and Nelson's method of transacting business; that he was present at the bank when the proceeds of the wool were disbursed by Nelson; that he assented to the disbursements then made, and

that the only business relations of defendant and his brother
with Nelson upon which plaintiff bases his complaint were
those of bankers and depositor, all of which the plaintiff
knew. Findings were made in favor of the defendant, and
the action was dismissed at the costs of plaintiff, who has
appealed.

The trial court, over appellant's objection, admitted evi-
dence showing numerous deposits of money by Nelson in the
bank other than proceeds of the sales of the sheep, pelts, and
wool. Appellant now insists that error was thereby com-
mitted; that although this case is in this court for trial
*de novo*, the error complained of was prejudicial, as the court
below considered such incompetent and immaterial evidence in
making the findings of fact. One theory on which the appel-
lant claims the respondent to be liable is that the proceeds of
the sales made by Nelson were all delivered to respondent per-
sonally, who at the time knew the sources from which the
money came, and should have so applied the same as to pro-
tect appellant's second mortgage lien. Undisputed evidence,
however, shows that Nelson deposited in the bank money re-
ceived by him from the sheep, pelts, wool, and other sources,
receiving the credit therefor in a single running account, and
checking against the same. If no money had been deposited
other than that received from sales of the sheep, pelts, and
wool, and if respondent only had been interested in the bank,
it might possibly be contended that, instead of making ordi-
nary bank deposits, Nelson was delivering the money into the
custody and control of the respondent to be used in discharge
of his mortgage lien and also of appellant's second mortgage
lien. But if he made deposits of other funds in the same ac-
count, the situation would be entirely different. It was proper
for the trial judge to admit the evidence of such other de-
posits as tending to show the true business relations between
the parties. For the same purpose it was also proper to admit
in evidence numerous checks drawn by Nelson in favor of re-
spondent, appellant, and other parties. No prejudicial error
was committed in receiving or rejecting evidence.

The other assignments of error are based upon the contention that the findings of fact are not sustained by the evidence, all of which we have carefully read and considered. Much conflict existed between the various witnesses in their testimony affecting material issues. The trial judge had the advantage of seeing the witnesses and hearing them testify. There is ample evidence in the record to sustain the findings made, which we will not disturb. The findings being sustained, the judgment must be sustained also.

It appeared that the respondent held a first mortgage lien on the wool, the sheep, and their increase, while appellant's second mortgage was a lien on the original flock of sheep only. Appellant contends that as the proceeds of sales of the wool and the lambs or increase came into respondent's possession, he should have credited the entire amount on his first note and mortgage; that he failed to do so, but knowingly permitted Nelson to divert the money to other purposes; that by reason of respondent's acts appellant lost his security, and respondent is liable. The equitable rule, that when one holds a first mortgage on property, a portion of which is covered by a second mortgage, the first mortgagee may be required to first exhaust that portion of the property covered by his lien not subject to the second mortgage, thus protecting the lien of the second mortgagee, need not be questioned. The trial court, however, found that, when the proceeds of the wool, subject only to respondent's lien, were disbursed, appellant, respondent, and Nelson were all present; that Nelson by check paid a portion of the money on respondent's first mortgage, another portion on other notes held by respondent, and a small amount on the claim of a third party, and that no objection was made by appellant to such disbursements, all of which were made with his knowledge and consent. It was further found that appellant had knowledge of, and consented to, all the dealings and transactions between Nelson and the respondent, pertaining to sales of the sheep, wool, and pelts. Although the evidence was conflicting, it was sufficient to sustain these findings.

There was no showing that respondent or the bank had agreed to receive and hold funds arising from the sales, as trustee or agent for appellant, or that they were authorized to apply the same on appellant's note. Appellant made no demand of the bank or Nelson for any such application of the money until just prior to the commencement of this action, at which time Nelson's bank account had been closed, his last check for $205.37 having been issued to appellant and credited on his note on March 10, 1905, more than four months after Nelson had made the final sale of the sheep with appellant's consent, and had deposited the proceeds in the bank. Appellant testified that he had continual confidence in Nelson and trusted him. Under such circumstances it certainly was not the duty of respondent or the bank to refuse payment of Nelson's checks so that they might hold the funds for credit on appellant's note, which was not in the possession or control of either of them for collection or for any other purpose. They were in no position to have returned the note to Nelson had he paid it. The allegations of appellant's complaint and the undisputed evidence both show that the entire proceeds of the various sales of sheep, pelts, and wool, with the exception of $50, were deposited long after January 1, 1904, at and after which time the bank ceased to be the individual property of respondent, but was owned and conducted by the partnership consisting of respondent and his brother. It was not the duty of the bank to apply Nelson's deposits upon appellant's note, and respondent cannot be held liable for its failure to do so.

The judgment is affirmed.

Hadley, C. J., Mount, and Fullerton, JJ., concur.